DA 10-0284

IN THE SUPREME COURT OF THE STATE OF MONTANA

2010 MT 272N

IN THE MATTER OF:

M.S.,

      Respondent and Appellant.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DI 10-0022
Honorable Susan P. Watters, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Joslyn Hunt, Chief Appellate Defender, Koan Mercer, Assistant Appellate Defender, Helena, Montana

      For Appellee:

          Steve Bullock, Montana Attorney General, Matthew T. Cochenour, Assistant Attorney General, Helena, Montana

          Dennis Paxinos, Yellowstone County Attorney, Ryan Nordlund, Deputy County Attorney, Billings, Montana

Submitted on Briefs:  December 1, 2010

Decided:  December 21, 2010

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(d)(v), Montana Supreme Court 1996 Internal Operating Rules, as amended in 2006, the following memorandum decision shall not be cited as precedent. It shall be filed as a public document with the Clerk of the Supreme Court and its case title, Supreme Court cause number and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 M.S. is a homeless woman living in Billings, Montana. She was 40 years old when, on April 9, 2010, Billings police picked her up as she was wandering, wearing little or no clothing, through the streets of Billings. She was visibly underweight, confused, disoriented and appeared to be talking to someone named "Angie," though no one was with her. The officers transported her to the Billings Clinic (Clinic), believing she might need medical or psychological attention. M.S. remained an inpatient at the Clinic for more than 30 days.

¶3 While at the Clinic she was evaluated by various personnel, including a physician, a psychiatric nurse and a social/case worker. During this time, M.S. displayed multiple signs of psychosis as well as confusion and a detachment from reality. Furthermore, she was unable to articulate a plan for acquiring shelter and regular meals were she discharged from the Clinic. On May 4, 2010, after working with M.S. for almost a month, the Billings Clinic psychiatric nurse asked the Yellowstone County Attorney's Office to file a petition to involuntarily commit M.S. to the Montana State Hospital (MSH). The District Court for the Thirteenth Judicial District, Yellowstone County, held

2

an evidentiary hearing on May 10, 2010. On May 11, the court issued its Findings of Fact, Conclusions of Law, and Order ordering M.S.'s involuntary commitment to MSH for not more than 90 days and authorizing the involuntary administration of medication. M.S. appeals. We affirm.

## STANDARD OF REVIEW

¶4 We will disturb the district court's findings in a civil commitment case only if they are clearly erroneous, when viewed in a light most favorable to the prevailing party. *In re Mental Health of M.C.D.*, 2010 MT 15, ¶ 9, 355 Mont. 97, 225 P.3d 1214 (internal citations omitted). We review the court's conclusions of law for correctness. *In re G.M.*, 2008 MT 200, ¶ 22, 344 Mont. 87, 186 P.3d 229 (citation omitted).

## DISCUSSION

¶5 On appeal, M.S. argues that she did not meet the criteria for commitment to MSH, that commitment to MSH was not the least restrictive alternative, and the court misinterpreted the statute authorizing the administration of involuntary medication. Her appeal challenges both the District Court's factual findings and its conclusions.

¶6 M.S. argues that certain findings are clearly erroneous—e.g., that she suffers from a statutorily qualifying "mental disorder" and she needs consistent care that can only be provided by an inpatient facility like MSH. We note, however, the record contains conflicting testimony as to factors considered by the court to determine if M.S. has a mental disorder, including but not limited to the severity of M.S.'s symptoms of mental illness and the degree to which she can be self-sufficient. It is well established that a district court sits in the best position to observe and judge witness credibility and we will

3

not second guess its determination regarding the strength and weight of conflicting testimony. *Kulstad v. Maniaci*, 2009 MT 326, ¶ 90, 352 Mont. 513, 220 P.3d 595. Moreover, we review the record to determine whether substantial evidence exists to support the district court's finding, not whether the record supports alternative findings. *G.M.*, ¶ 55. Reviewing the record and the District Court's findings accordingly, we conclude the record supports the District Court's findings that M.S. has a qualifying mental illness, and therefore these findings are not clearly erroneous.

¶7 Turning to the court's legal conclusions, the court relied upon §§ 53-21-102 and -126-128, MCA. These statutes direct how treatment and care for mentally ill persons should be administered. While M.S. disputes that she is mentally ill, that she cannot take care of herself, and that she required commitment to MSH, the District Court determined, based upon the supported facts, that she met the statutory criteria set forth in § 53-21-126(1)(a), MCA. This statute requires the district court to determine, among other things, whether a respondent "because of a mental disorder, is substantially unable to provide for the respondent's own basic needs of food, clothing, shelter, health, or safety." The District Court concluded, based upon credible evidence, that M.S. was unable to so provide for herself. As the facts support this ruling, we will not disturb it.

¶8 M.S. also argues that she should not have been committed to MSH because the state mental hospital was not the "least restrictive alternative[] necessary to protect the respondent and the public and to permit effective treatment," as required by § 53-21-127(5), MCA. We disagree. The record indicates that several alternatives throughout the community were explored and investigated by the Billings Clinic staff and

4

by Adult Protective Services. However, M.S.'s specific circumstances kept her from qualifying for many community services and space was not available at the facility to which she may have qualified. Under these circumstances, the District Court's only alternative—at that time—that could provide her with 24-hour supervision to keep her safe and allow for treatment was MSH. We conclude the District Court did not err in making this determination.

¶9 Lastly, citing § 53-21-127(6), MCA, M.S. argues the District Court erred in authorizing MSH to involuntarily administer medication to M.S. M.S. asserts that the court's conclusion that such "involuntary medication *may be* necessary to facilitate treatment for M.S," was wrong in that the statute requires the court to determine that involuntary administration of medication *is* necessary. While the court's findings and conclusions could support a ruling that involuntary medication for M.S. was necessary, the court's language appears to recognize that the applicable statute, § 53-21-127(6), MCA, cedes authority to actually administer medication to a facility's chief medical officer or physician. The statute sets out in detail how a facility determines whether to administer medication against a patient's wishes. In other words, even if the court concludes that involuntary administration of medication "is" necessary, the medical professionals at the given facility may conclude otherwise. The statutes have various safeguards to prevent a patient from being medicated against his or her will unnecessarily. As a result, we will not overturn the District Court's ruling based upon the court's use of "may be necessary" rather than "is necessary."

¶10    We have determined to decide this case pursuant to Section I, Paragraph 3(d) of our 1996 Internal Operating Rules, as amended in 2006, which provides for memorandum opinions. Our review of the record indicates that the court's findings are clearly supported by the evidence presented in this case and the court's conclusions, based upon those findings, are not incorrect.

¶11    We affirm.

/S/ PATRICIA COTTER

We concur:

/S/ MIKE McGRATH
/S/ MICHAEL E WHEAT
/S/ BRIAN MORRIS
/S/ JIM RICE